Vernon L. NEWSOME, Plaintiff,

v.

Allyn R. SIELAFF, Commissioner, et al., Defendants.

Civ. A. No. 71–2934.

United States District Court, E. D. Pennsylvania.

May 10, 1974.

Curtis R. Reitz, Supervising Atty., Ralph Jacobs, Legal Intern Indigent Prisoner Litigation Program, University of Pennsylvania Law School, Philadelphia, Pa., for plaintiff.

Michael Minkin, Asst. Atty. Gen., Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

Plaintiff, Vernon L. Newsome, instituted this action under Sections 1983 and 1985 of Title 42 seeking damages and injunctive relief against defendants for violation of his constitutional rights while a prisoner at the State Correctional Institution at Graterford, Pennsylvania. In a *pro se* complaint, plaintiff alleges that he was subjected to cruel and unusual punishment in violation of the eighth and fourteenth amendments during his confinement in the maximum security cell block at Graterford. To support this allegation, plaintiff cites the conditions of his confinement and the *denial of medical treatment.* In addition, plaintiff alleges that certain letters and publications mailed to him were never received and that certain possessions were missing after his personal property was delivered to him in the maximum security cell block. In accordance with Local Rule of Civil Procedure 9½, law students from the University of

Pennsylvania Indigent Prisoner Litigation Program were appointed to represent plaintiff. Interrogatories by both sides have been served and answered. On the basis of the pleadings and answers to interrogatories, defendants move for summary judgment. No affidavits have been filed in support of the motion. Plaintiff's responsive brief, however, is accompanied by a supporting affidavit.

## I. IMMUNITY

■■ Three of the four defendants, Sielaff, Johnson and Lightcap, claim that as state prison officials they are protected from suit on the grounds of governmental immunity. It is well settled that governmental immunity is not a defense to a prayer for injunctive relief in a suit against state officers alleged to have violated the fourteenth amendment. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Safeguard Mutual Insurance Co. v. Miller, 472 F.2d 732, 734 (3d Cir. 1973); Lewis v. Kugler, 446 F.2d 1343 (3d Cir. 1971). Plaintiff's complaint requests both injunctive relief and damages. Summary judgment on the ground of immunity is, therefore, unwarranted with respect to plaintiff's claim for injunctive relief. Immunity may be asserted, though, in defense of a claim for damages. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Johnson v. Alldredge, 488 F.2d 820 (3d Cir. 1973); Safeguard Mutual Insurance Co., *supra*; Boulware v. Parker, 457 F.2d 450 (3d Cir. 1972). Therefore, as per that claim, the defense is properly raised.

■ Defendants urge a finding of immunity because the actions involved meet the two requirements set forth in Johnson v. Alldredge, *supra,* for a finding of common law executive immunity. *Johnson* held that a federal prison warden was entitled to summary judgment in an action by a federal prisoner for deprivation of constitutional rights on the ground of common law executive immunity. *Johnson, supra* at 826. In reaching this decision, the court held that executive immunity potentially extended to any federal executive official and delineated two requirements for a finding of immunity. First, the challenged action must involve an exercise of judgment and second, the challenged action must be within the outer perimeter of the defendant-official's duties. *Id.* at 824. On the basis of two uncontroverted affidavits submitted by the defendant warden and his immediate superior attesting to the scope of the warden's authority, the court concluded that the warden had satisfied the above immunity requirements and was entitled to immunity as a matter of law.

In the instant case, even assuming that common law governmental immunity would potentially extend to a state prison official,[1] the present record does

---

1. In Gaito v. Ellenbogen, 425 F.2d 845 (3d Cir. 1970), a state prisoner brought a civil rights action against various state officials, including the prison superintendent. The Third Circuit there stated:

> Four of the five named defendants, the two judges, the Attorney General, and the District Attorney, are immune from suit based on their actions as state officials. [citations omitted]. The remaining defendant, a prison official, is not similarly clothed with immunity. . . .

*Id.* at 849.

This language would seem to suggest that governmental immunity does not extend to state prison officials. However, it is unclear whether this is a proper construction of *Gaito* in view of the Third Circuit's recent discussion of this language in *Johnson*. In stating that *Gaito* did not contradict the holding of Bauers v. Heisel, 361 F.2d 581 (3d Cir. 1966), cert. denied, 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967), that Section 1983 does not abrogate immunities recognized at common law, the *Johnson* court remarked:

> the statement in *Gaito* that prison officials are not immune from damage suits was not required for the disposition of that case: dismissal of the complaint against the warden for failure to state a claim. The short treatment of possible immunity for the warden may indicate that the Court did not intend to rule on the warden's immunity. Instead, the reference to his non-coverage by immunity seems de-

not establish satisfaction of the two-fold immunity test of *Johnson.* Of critical distinction between the instant case and *Johnson* is the total absence in this case of any affidavits by either defendants or their superiors specifically establishing the authority vested in them. The pleadings and answers to interrogatories are similarly devoid of any such information. The Third Circuit in *Johnson* emphasized its reliance on the uncontroverted affidavits and carefully observed that:

> In cases where the authority of the official or the nature of the actions taken by him were unclear, we have deferred decisions regarding immunity until further development of those facts.

*Johnson, supra* at 826, n. 8. See also Safeguard Mutual Insurance Co., *supra,* where the district court dismissal on a 12(b) motion of a civil rights complaint on the basis of governmental immunity was reversed by the Third Circuit because the record did not sufficiently establish the nature of the defendants' governmental positions and the scope of their authority. In the instant case, the record provides inadequate basis for determining whether the immunity requirements of *Johnson* have been satisfied. The motion for summary judgment on the ground of immunity must therefore be denied.[2]

## II. FAILURE TO STATE A CLAIM

■ Defendants' second argument for summary judgment is that the allegations in plaintiff's *pro se* complaint,

even when supplemented by plaintiff's answers to interrogatories, fail to state a claim upon which relief may be granted. In determining whether plaintiff's allegations state a claim for relief several concepts must be kept in mind. *Pro se* civil rights complaints are held to less stringent standards than formal pleadings drafted by lawyers in deciding whether a claim for relief is established,[3] Haines v. Kerner, 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); United States ex rel. Tyrrell v. Speaker, 471 F.2d 1197, 1200–1201 (3d Cir. 1973); Gray v. Creamer, 465 F.2d 179, 181–182 (3d Cir. 1972), and such complaints are to be liberally construed by reviewing courts. United States ex rel. Birnbaum v. Dolan, 452 F.2d 1078, 1079 (3d Cir. 1971); United States ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84, 86 (3d Cir.), cert. denied, 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1969). Furthermore, as this is a motion for summary judgment, a district court must resolve all inferences of fact, doubts and issues of credibility against the moving party. Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 874 (3d Cir. 1972). With these standards in view, I now address the allegations of plaintiff's complaint.

Plaintiff alleges that he was subjected to cruel and unusual punishment in violation of the eighth and fourteenth amendments during his confinement in the maximum security cell block. In support, he avers that: he was fed on the floor through the same opening used for the toilet brush and cleaning mop; he ate in stench and filth which caused him

signed only to distinguish the warden from the other *Gaito* defendants, all of whom were clearly immune under decisions of this Court or of the Supreme Court, to allow disposition of the complaint against the warden to rest on another ground, namely failure to state a claim. *Johnson, supra* at 827.

2. Although not argued by defendants, it should be added that nothing in this record would indicate that the challenged actions of defendants were performed pursuant to court order. Therefore, no factual basis ex-

ists for concluding that the defendants possess derivative immunity under the doctrine that public officials acting at the direction of the court are immune from liability. Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.), cert. denied, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969).

3. As noted earlier, law students from the University of Pennsylvania presently represent plaintiff. However, the challenged complaint was drafted entirely by plaintiff acting *pro se.*

to vomit continuously; his cell contained no light or window which damaged his sight; his requests to see an eye doctor were denied; his requests for medical treatment for muscle spasms were denied; his requests for medical treatment and medicine prescribed for a skin condition were denied; he was periodically denied exercise for five days at a time and only allowed outdoor exercise on the sunniest days.

With respect to the conditions of plaintiff's confinement, it is well established that solitary confinement is not *per se* cruel and unusual punishment and that the temporary inconveniences and discomforts incident thereto cannot be regarded as a basis for judicial relief. United States ex rel. Tyrrell v. Speaker, *supra* at 1202; Ford v. Board of Managers of New Jersey State Prison, 407 F. 2d 937, 940 (3d Cir. 1969); Bauer v. Sielaff, 372 F.Supp. 1104, 1109 (E.D.Pa. 1974); United States ex rel. Bracey v. Rundle, 368 F.Supp. 1186, 1191 (E.D.Pa. 1973). However, conditions of confinement of inhuman and barbaric proportions which shock the conscience of the court constitute cruel and unusual punishment and are actionable under the Civil Rights Act. *See, e. g.,* Wright v. McMann, 387 F.2d 519, 521, 525 (2d Cir. 1967) (allegations of solitary confinement in an inheated cell with open windows in winter encrusted with slime and human excrement without clothing or rudimentary hygienic supplies under threat of beatings would, if established, constitute cruel and unusual punishment.) Knuckles v. Prasse, 302 F.Supp. 1036, 1061–1062 (E.D.Pa.1969), aff'd, 435 F.2d 1255 (3d Cir. 1970), cert. denied, 403 U.S. 936, 91 S.Ct. 2262, 29 L. Ed.2d 717 (1971) (Confinement of two prisoners for 2½ days in a cell 6′ x 9′ 11″ with no window or light, a single bed, no clothing or toilet articles and a malfunctioning toilet constituted cruel and unusual punishment.). See also Landman v. Royster, 333 F.Supp. 621, 648–649 (E.D.Va.1971); Jordan v. Fitzharris, 257 F.Supp. 674 (N.D.Cal.1966). This constitutional standard of "cruel and unusual punishment" is not readily adaptable to precise mathematical application. It rather depends on a careful analysis of the totality of circumstances in each case. United States ex rel. Bracey v. Rundle, *supra* at 1191. In the instant case, all of the facts concerning the conditions of plaintiff's confinement have not been presented to the court.[4] Until the record is more fully developed, it cannot be said at this stage that the plaintiff can prove no set of facts which would entitle him to relief on the basis of "cruel and unusual punishment." This is especially true in the instant case, because in addition to the allegations concerning confinement conditions, plaintiff has also alleged several instances of medical treatment denial to support his claim of "cruel and unusual punishment." Although it is clear that claims of mere negligent medical treatment are not cognizable under the Civil Rights Act, Gittlemacker v. Prasse, 428 F.2d 1, 5–6 (3d Cir. 1970); Church v. Hegstrom, 416 F.2d 449, 450–451 (2d Cir. 1969), deliberate denial of necessary medical treatment can constitute "cruel and unusual punishment." Martinez v. Mancusi, 443 F.2d 921, 923–925 (2d Cir. 1970); United States ex rel. Ingram v. Montgomery County Prison Board, 369 F.Supp. 873, 874–875 (E.D.Pa.1974); Ramsey v. Ciccone, 310 F.Supp. 600, 604–605 (W.D.Mo.1970). Plaintiff's allegations of medical treatment denial, which are supported by an uncontroverted affidavit, are, therefore, clearly sufficient to establish a claim for relief on the basis of "cruel and unusual punishment."[5]

---

4. For example, the duration of plaintiff's confinement in the maximum security cell block has not been formally established. The *Tyrrell* case indicates that duration of confinement can be a significant factor in measuring the severity of confinement conditions.

United States ex rel. Tyrrell v. Speaker, *supra* at 1202.

5. Defendants argue that plaintiff's answers to interrogatories indicate that plaintiff's sole claim is for inadequate medical treat-

Plaintiff's complaint also avers interference with his mail delivery as certain letters and publications mailed to him were never received. In his affidavit, plaintiff further states that literature of a political nature to which he had subscribed was never received despite invoices indicating that the literature had been mailed. With respect to prisoner mail, it is clear that state prison officials do not have unfettered discretion to censor or restrict an inmate's mail and interference with a prisoner's mail can give rise to constitutional claims. Gray v. Creamer, 465 F. 2d 179, 186 (3d Cir. 1972). In the instant case, it cannot be determined from either the plaintiff's complaint or affidavit whether the nondelivery of mail was the result of censorship on the part of the defendants or mishandling on the part of delivery personnel. However, giving the complaint the liberal construction that I must and resolving all factual inferences against the defendants, it cannot be said that plaintiff's allegations do not raise potentially cognizable claims under the fourteenth amendment. Dismissal is, therefore, inappropriate.

Plaintiff's final claim is for restitution for personal belongings which were missing after his property was sent to him in the maximum security cell block. It must be emphasized that to state a claim under the civil rights act, a plaintiff must allege conduct which deprives him of rights, privileges or immunities secured to him by the Constitution or laws of the United States. Howell v. Cataldi, 464 F.2d 272, 279 (3d Cir. 1972); Gittlemacker v. Prasse, *supra* at 6; Basista v. Weir, 340 F.2d 74, 79 (3d Cir. 1965). In this regard, "[i]t becomes important to delineate that conduct which is actionable in state courts as a tort, and that which is actionable in federal courts under § 1983. The two rights of action do not always stand *in pari materia*. Some common law and statutory torts, although actionable in a state forum, do not rise to constitutional dimensions." Howell v. Cataldi, *supra* at 278. In the instant case, even assuming that plaintiff could establish that defendants are liable for the loss of his personal articles, it would seem that such liability would be founded on either a theory of common law negligence or breach of a state statutory duty—neither of which are cognizable actions under the Civil Rights Act. *Id.* Plaintiff's claim for restitution should, therefore, be dismissed. However, since this case will involve litigation on the other issues raised by plaintiff, there is no reason to prevent plaintiff from presenting at that time any evidence which would demonstrate that his restitution claim is based on constitutional or federal law and not state tort law. *Cf.* United States ex rel. Tyrrell v. Speaker, *supra* at 1202; Gray v. Creamer, *supra* at 187.

---

ment and not denial of medical treatment. It is true that in response to certain questions, plaintiff described his claim as one for inadequate medical treatment. *E. g.*, Answers 3(a), 8. In answering other questions, however, plaintiff stated that his claim involved the denial of medical treatment. *E. g.*, Answers 2(d), 4, 5. Plaintiff's affidavit also re-asserts the denial of medical treatment. It cannot, therefore, be concluded that the sole claim is for inadequate medical treatment.