Otis J. **TATE** et al.

v.

Stewart **WERNER** et al.

Civ. A. No. 74–1418.

United States District Court,
E. D. Pennsylvania.

May 16, 1975.

John Whitfield, Prof. Ralph S. Spritzer, Philadelphia, Pa., for plaintiff.

Glenn Gilman, Deputy Atty. Gen., Commonwealth of Pennsylvania, Harrisburg, Pa., for defendant.

Steven R. Waxman, Philadelphia, Pa., for intervenor.

## OPINION AND ORDER

FOGEL, District Judge.

Monserrate Zapata, one of the two named plaintiffs in this civil rights class action, has filed a *pro se* motion entitled "Motion to Present Incidental to Complaint". For the reasons set forth in this memorandum, we will dismiss the motion with prejudice.

The class action out of which this motion springs was filed *pro se* and *in forma pauperis* by Otis Tate and Monserrate Zapata, two inmates of the State Correctional Institution at Graterford. The complaint alleges, *First*: that the law library at the prison was inadequate and in violation of the standards mandated by the sixth amendment, and *Second*: that racial and religious discrimination exists in the operation of the law clinic at the prison facility, in violation of the fourteenth amendment.

Suit was based upon the Civil Rights Act, 42 U.S.C. § 1983; jurisdiction was grounded upon 28 U.S.C. § 1343. The petition to proceed *in forma pauperis* was granted, and counsel was appointed from one of the local law schools, as authorized by Rule 9½ of the Local Rules of Civil Procedure of this Court.

As matters developed, the Court and both parties recognized that the Paraprofessional Law Clinic at Graterford was not adequately represented by the plaintiffs or by the defendants. We therefore granted the motion of the Law Clinic to intervene, pursuant to Rule 24 of the Federal Rules of Civil Procedure. With all interested classes represented in the action, counsel were then able to agree upon a format for settlement of the claim relating to discrimination at the Law Clinic. This settlement was acceptable to us, and we directed that it be drafted as a proposed Order, which we then required to be posted at appropriate locations in the institution.[1] Pursuant to that notice and order, comments from the inmates were to be directed to

1. Order for Notice and Hearing, signed April 4, 1975.

the Court, and a date was set for a final hearing upon the proposed settlement. At that hearing, it developed that there was some question about compliance with our order with respect to posting. Accordingly, we issued a subsequent order setting forth new time frames for notice and posting, pursuant to this Court's discretion under Rule 23(c).[2]

We determined that the claim relating to adequacy of the law library should not be considered by us. The same issue had previously been raised in the case of I.C.U. v. Shapp, Civil No. 70-3054 (E.D. Pa., filed Nov. 4, 1970). Chief Judge Lord, of this District, certified that suit as a class action on October 20, 1972; the class consists of all state prison inmates, including Graterford inmates. Accordingly, all counsel have agreed that the claim of adequacy of the law library should be dismissed, in accordance with the provisions of Local Rule 3 and Rule 23 of the Federal Rules of Civil Procedure because of the pendency of the prior class action.

Plaintiff Zapata, who is otherwise in total agreement with the settlement order of the Court, has filed this motion, which relates to the dismissal of the law library aspect of the case. As the Court understands the motion, Mr. Zapata's complaint is two pronged; *First*: that he has higher priority than the members of the class in I.C.U. v. Shapp, *supra,* and therefore is entitled to a determination of the issue of the adequacy of the law library in this Court, irrespective of the status of the I.C.U. v. Shapp determination; and *Second*: that he is being held illegally in Graterford State Correctional Institution. We will deal with both contentions.

Mr. Zapata cites two cases for the concept that his "incidental" claim has priority. In The Robin Goodfellow, 20 F.2d 924 (W.D.Wash.1927), the court discussed the meaning of the term "incidental". However, this was in the context of a suit in contract, where the

issue was whether the loading of lumber on a ship was *incidental to* or *ultra vires* the objects of the lumbering association's charter. There is no possible relevance to the situation before us. In particular, the concept has no force in support of his contention that his claim has precedence over the class action before Chief Judge Lord. Watts v. Copeland, 170 S.C. 449, 170 S.E. 780 (1933) also defined the term "incidental", but in the context of what rights and obligations passed with the assignment of a judgment. The court cited hornbook law to the effect that those rights *incidental* to the judgment followed the assignment. Again, we fail to see any possible legal nexus between that doctrine and the principle pressed by plaintiff Zapata.

■ To the contrary, both comity, and effective judicial administration dictate that we defer decision as to those aspects of a case which are now the subject of a class action previously filed; *see* Rule 23(b)(1). Any contrary holding would distort the purpose and plain meaning of Rule 23(b)(1) governing class actions. Also, Local Rule 3 points up that the firm policy of this court is to avoid duplication of effort in substantially identical suits. Since counsel are all in agreement with respect to a dismissal of the issue questioning the adequacy of the law library, a conclusion with which we concur unequivocally, we will dismiss that phase of Mr. Zapata's motion with prejudice.

■ If Mr. Zapata's real complaint stems from his alleged illegal or unconstitutional detention at Graterford, then this action is not an appropriate one in which to raise such a complaint. The powers of a federal district court under 42 U.S.C. § 1983 extend to damages and injunctive relief. The Civil Rights Act is not a substitute for habeas corpus relief. Gaito v. Ellenbogen, 425 F.2d 845, 848 (3d Cir. 1970). Accordingly, on both scores the motion before us will be dismissed with prejudice.

2. Order for Notice and Hearing, signed May 7, 1975.